UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Cause No. |
| | ) 2:22-cr-00002-JPH-CMM-1 |
| v. | ) |
| | ) |
| SHANE MEEHAN, | ) |
| | ) |
| Defendant. | ) |

### REPLY IN SUPPORT OF MOTION TO STRIKE
### NOTICE OF INTENT TO SEEK THE DEATH PENALTY

Over three years ago, DOJ attorneys informed the Court that a "final decision" *not* to seek the death penalty against Shane Meehan was "made and approved at all necessary levels at Main Justice." Dkt. #166 (Tr. 7-28-2022) at 2; *see also* Dkt. 75 (July 11, 2022 no-seek notice). For the past three years, Mr. Meehan's counsel and the Court have operated as if this were not a death penalty case – because it was not. The DOJ contends that its earlier representations do not matter, arguing, in essence, that the government is entitled to be fickle and unpredictable, and that the Court has no power to hold the DOJ to its word.

The Response to Mr. Meehan's Motion to Strike Notice of Intent to Seek the Death Penalty hinges on the DOJ's assertion that, "Just as this Court possesses inherent power to reconsider its decisions, so too do the Attorney General and the Department of Justice." Dkt. 185 (Resp.) at 9.[1] Every part of this sentence is incorrect. There is no basis for the assertion that the Department of Justice has "inherent power." Certainly, there is no basis for the assertion that the

---

[1] The government also filed a Response at Dkt. 183. All direct quotes in this Reply are the same in Dkts. 183 and 185.

1

DOJ's power is so great that it need not honor its word to the Court.[2] Without any support in law – or, for that matter, logic – the DOJ ascribes itself a stunning amount of power. It shows no regard for whether defendants can trust the DOJ's representations and even rejects the notion that the Court has the power to hold the DOJ accountable to its commitments.

This is a disturbing assertion of government power, and in a case where the government seeks to extract the most extreme punishment – death – on one of its own citizens, no less. This Court should not facilitate the DOJ's power grab and thus co-sign its own irrelevance. The DOJ's unpersuasive arguments offer no reason why it should not be bound by its representation that a "final decision" had been made not to seek the death penalty against Mr. Meehan.

Every other court presented with this issue has struck the government's Notice of Intent. *See* Dkt. 175 at 2 (listing cases). The reasoning in those cases is persuasive. The courts are unanimous because it is not a close question.

Moreover, the facts in this case provide compelling reasons why the Court should join the other district courts and strike the Notice of Intent, and most definitely do not provide reasons why this case should be the exception. First, as noted above, the DOJ assured the Court that it had reached a "final decision" not to seek the death penalty against Mr. Meehan. The Court took extraordinary care to ensure it understood whether this case would proceed as a capital case, recognizing that whether or not the government was seeking the death penalty was a "game

---

[2] Even the Court's inherent powers, which are powers that "cannot be dispensed with in a Court, because they are necessary to the exercise of all others" do not actually include the inherent power to capriciously reconsider decisions (rather, the Court can vacate judgments "upon proof that a fraud has been perpetrated upon the court"). *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 7 (1812)). Courts are, however, "universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates," i.e. holding litigants to their representations about what they will or will not do. *Id.* (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)).

changer, creating a different landscape." Dkt. #166 (Tr. 7-28-2022) at 6. Second, in the time since the DOJ reached that final decision, BOP evaluators and this Court have determined that Mr. Meehan was incompetent to stand trial. The BOP has recently found Mr. Meehan was severely mentally ill, suffering from a delusional disorder, at the time of the crime. This is simply not a case where new facts have been discovered indicating the death penalty is appropriate. Quite the contrary.

In sum, there is no legitimate argument that the government can now seek the death penalty against Mr. Meehan, a severely mentally ill man, having assured the Court that it would not. For the reasons below and in Mr. Meehan's Motion to Strike (Dkt. 175), this Court should strike the Notice of Intent to Seek the Death Penalty and hold that the government cannot seek the death penalty against Mr. Meehan.

**1. The statute prohibits revoking a final decision not to seek the death penalty and, regardless of the statute, there is no doubt that the Court has the supervisory authority to enforce parties' commitments.**

The government asserts that "there is no statutory provision that prevents the United States from filing a NOI after previously filing a No-Seek Notice, and the Court lacks a legal basis to craft such a rule itself." Dkt. 185 at 8. This assertion ignores that in this case the government told the Court that it had reached a "final decision" not to seek the death penalty. There is no doubt that the Court has the power to require litigants, including the government, to speak the truth and to keep their word. In this case, the government's representation to the Court that it would not seek the death penalty is decisive.

And while the government argues that allowing it to seek the death penalty after filing a no-seek notice would be "consistent with the reasoning of the *Spurlock* court," this is an imaginative misreading of *Spurlock*. Every sentence of the *Spurlock* decision is an explanation

3

for why the government cannot seek the death penalty after filing a no-seek notice. *See United States v. Spurlock*, 782 F. Supp. 3d 987 (D. Nev. 2025).

The government says that the "*[p]er se* irrevocability of the NOI was not one" of the reasons for striking the Notice of Intent. Dkt. 185 at 7. The *Spurlock* court did say that it did not need to reach this issue because of the strength of the other grounds for relief:

> The Court grants the Motion on three overarching bases, each of which is independently sufficient. First, the government's Death Notice severely violates the Court's order setting a deadline to declare intent to seek death and is further barred by the principals of judicial estoppel. Second, the Death Notice violates the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3593, because the government never sought leave to amend its July 2024 No-Seek Notice and does not have good cause to do so, and because the government filed the Death Notice unreasonably close to the firmly-set trial date. Third, the filing of the Death Notice at this late stage in the proceedings violates Spurlock's Sixth Amendment rights. *Given the strength of each of these grounds for striking the notice, the Court does not reach Defendant's other arguments for relief.*

*Spurlock*, 782 F. Supp. 3d at 1001 (emphasis added). In spite of this statement, the court nevertheless indicated that a no-seek is irrevocable, contrary to the government's argument. The court said: "The Ninth Circuit implicitly recognized the core need for certainty in administering and monitoring these ethical obligations when it addressed the impact of an '*irrevocable decision not to pursue the death penalty*' the right to second counsel under 18 U.S.C. § 3005." *Spurlock*, 782 F. Supp. 3d at 1003 (quoting *United States v. Waggoner*, 339 F.3d 915, 918 (9th Cir. 2003)).[3]

The government's point that "[a]n initial decision should not freeze future conduct" may be true in a general sense, but it has no bearing on the question before this Court, as the *Spurlock* court emphasized. Dkt. 185 at 8 (quoting *United States v. Goodwin*, 457 U.S. 368, 382 (1982)). Acknowledging that it is "usually true that an initial decision should not freeze future conduct in

---

[3] The Ninth Circuit, whose decisions bind the *Spurlock* court, has held that the government's decision not to pursue the death penalty is "irrevocable." *Waggoner*, 339 F.3d at 919.

4

the exercise of prosecutorial discretion," the *Spurlock* court nevertheless determined that it could strike a Notice of Intent in light of the government's prior representation that it would not seek the death penalty. *Spurlock*, 782 F. Supp. 1006 (citing *Goodwin*, 457 U.S. at 382).[4]

In addition to misconstruing *Spurlock*, the government more broadly ignores the importance of the Federal Death Penalty Act's notice requirement. *See* Dkt. 175 at 11. If a formal notice that the government is not seeking the death penalty (i.e. a no-seek notice) can be withdrawn on a whim, then the federal judiciary loses the ability to manage dockets. If no-seek

---

[4] The government agrees that the Notice of Intent was not an amendment to the prior notice. Dkt. 183 at 9. In the event the Court determines it is necessary to analyze the Notice of Intent as an amendment, Mr. Meehan's Motion explained why the government did not show good cause. *See* Dkt. 175 at 21-23.

It is worth noting that, in attempting to argue against good cause, the government mischaracterizes counsel's statements about Mr. Meehan's competence. The government says, "defense counsel's claim that they would have 'resolved the case via plea or trial prior to January 20, 2025, is illogical because from at least March 2022, defense counsel evidently believed their client was not competent and therefore they could not ethically have pled him guilty." Dkt. 183 at 13 (internal record citation omitted).

In fact, counsel's statement in the Motion to Strike was: "*Had Mr. Meehan been competent*, undersigned counsel would have resolved the case via plea or trial prior to January 20, 2025." Dkt. 175 at 10 (emphasis added). The context is important. The entire paragraph reads:

> One key point about the timing is that Mr. Meehan had a trial set for May 2023, before the change in administration. That trial did not go forward because Mr. Meehan was incompetent to stand trial. Had the trial gone forward, or had Mr. Meehan been competent to plead guilty and decided to plead, then his case would not have been pending at the time of Attorney General Bondi's February 5, 2025 memo, and Mr. Meehan would not have been subject to the directives in that memo or the January 20, 2025 executive order. Had Mr. Meehan been competent, undersigned counsel would have resolved the case via plea or trial prior to January 20, 2025.

Dkt. 175 at 10. From this context, it is abundantly clear that counsel in no way suggested that Mr. Meehan could have participated in a trial or guilty plea prior to January 2025. Indeed, counsel's point is that Mr. Meehan currently faces the government's renewed efforts to seek the death penalty against him only because his case could not be resolved at that time, as a result of his incompetence. In effect, Mr. Meehan is being punished for being incompetent to stand trial or enter a plea.

5

notices are meaningless, then the time-consuming and costly obligations that apply in capital cases would have to be in place in all cases with death-eligible charges. This is an absurd result that produces a massive but wholly unnecessary impact on the federal fisc.

At the absolute minimum, courts should demand some changed circumstances in the case that justify seeking the death penalty, rather than allowing the government to change its mind on a whim. In this case, however, the recent factual developments are a finding that Mr. Meehan was incompetent to stand trial and the determination that he was delusional at the time of the crime. These developments are mitigating, not aggravating. They certainly do not constitute previously unknown reasons to seek the death penalty.

The government's only response to this concern is to state that "[i]f the Court concludes that once a No-Seek Notice is filed, it can never be changed to a NOI, then the United States could respond by announcing its intent to seek capital punishment in all capital-eligible cases merely to preserve its decision-making authority as a case develops." Dkt. 185 at 8. This remarkable statement is a threat, and not even a veiled one. The DOJ is saying that if the Court tries to hold the DOJ to its word, then going forward the DOJ will refuse to be honest with the Court about whether it plans to seek the death penalty, in complete disregard for not only the Court's authority but also the DOJ's own rules. *See* U.S. Dep't of Justice, Justice Manual, § 9-10.150.[5]

---

[5] The DOJ's manual directs prosecutors to "promptly inform the district court and counsel for the defendant once the Attorney General has made the final decision" whether to pursue a death sentence. It explains that "[e]xpeditious communication is necessary so the court is aware, in cases in which the Attorney General directs the [government] not to seek the death penalty," that enhanced defense resources are "no longer required" by statute. This provision of the Justice Manual is available at https://www.justice.gov/jm/jm-9-10000-capital-crimes.

This threat should not impact the Court's decision in this case. Per the government's threat, the choice is between, on the one hand, the DOJ draining the judiciary's resources by forcing courts to fund and staff all future death-eligible cases as active death penalty cases, and, on the other hand, the DOJ draining the judiciary's resources by forcing courts to fund and staff as active death penalty cases not only future cases but also cases where a no-seek has already been filed. These are not the only options because courts, in fact, have the power to require DOJ to be forthcoming. But if these are the only options, the former is the better one.

**2. The government has waived its ability to seek the death penalty, and its argument that waiver requires consideration is an invention of the government's own making spun from whole cloth.**

Second, the government's argument that waiver requires "some consideration, such as a guilty plea" has no basis in law. Dkt. 185 at 9. Waiver is the intentional relinquishment of a known right. *See United States v. Olano*, 507 U.S. 725, 733 (1993). Contracts require consideration. Plea agreements are contracts. Waiver is an entirely separate legal concept. Waiver is not governed by the law of contracts. There is no consideration requirement. The government cites no support for its assertion that waiver would require consideration. Because there is none.

Waiver simply means that if a party tells a court it will not do something, it cannot do it. This makes litigation predictable and allows courts to manage their dockets. *See Freytag v. Comm'r*, 501 U.S. 868 & n.2 (1991) (Scalia, J., concurring) (quoting 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2472 (1971)) (waiver is "'not a mere technicality and is essential to the orderly administration of justice.' . . . To abandon that principle is to encourage the practice of 'sandbagging'").

The only case the government cites to support its argument is *In re Vivint, Inc.*, 14 F.4th 1342 (Fed. Cir. 2021). *Vivint* is about the Patent Office's authority to reconsider decisions ordering patent reexamination pursuant to the governing statute. *Vivint*, 14 F. 4th at 1351

(holding that "[t]he Patent Office has authority to reconsider its decision ordering *ex parte* reexamination based on § 325(d)"). *Vivint*, which is about the proper interpretation of the patent statute, has no bearing on the issue before this Court.

The rest of the government's response to the argument that it waived the ability to seek the death penalty is an assertion of unchecked power. It says, "Nothing in the No-Seek Notice said or implied anything about the ability of the Department of Justice – or, more to the point, the ability of a future Attorney General – to reconsider that decision." Dkt. 185 at 9. That argument is preposterous on its face. Of course the no-seek notice meant that the DOJ could not reconsider its decision. If the no-seek notice had no impact on the DOJ's later decision-making, what was the point of the no-seek notice? And why did the government represent to the Court that the no-seek was a final decision? Perhaps it is telling that the government wants the rule to be that without a quid pro quo, it has no obligation to keep its word. But that is not the rule. Waiver includes no consideration requirements. Parties must honor their commitments to the Court even without a quid pro quo from the opposing party.

Indeed, waiver and even forfeiture are aggressively used to deny relief to defendants who previously failed to raise arguments.[6] Criminal defendants are bound by their previous arguments and evidence, even by decisions made in the heat of trial, and even by decisions made by incompetent prior attorneys.[7] Yet the government here argues that it should not be bound by prior

---

[6] "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Even when defendants do not affirmatively waive rights, but merely fail to timely assert them, they are often prohibited from raising arguments that were not previously raised.

[7] In *Fay v. Noia*, 372 U.S. 391 (1963), the Supreme Court announced that if a habeas petitioner challenging a criminal conviction knowingly failed to present an argument, "then it is open to the federal court on habeas to deny him all relief." *Fay*, 372 U.S. at 439. Since *Fay*, the standard has become more demanding. In *Coleman v. Thompson*, 501 U.S. 772 (1991), the

decisions because waiver somehow does not apply.[8] However, there is no justification for the argument that although defendants are bound by their prior decisions, that rule does not apply to the government.

### 3. Estoppel does apply to the government, and in any case the Court can require the government to keep its word.

Third, the government offers no persuasive reason why estoppel should not apply. "The doctrine of judicial estoppel is intended 'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment' and 'playing fast and loose' with the courts." *Spurlock*, 782 F. Supp. 3d at 1009 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 742-43 (2001)). For reasons that also apply here, the *Spurlock* court found that the government was judicially estopped from seeking the death penalty. *Spurlock*, 782 F. Supp. 3d at 1010.

Nevertheless, the government argues that estoppel rules do not apply to it. But even if that is correct, the government still has an obligation "to turn square corners" with opposing parties – not to mention the Court. *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect

---

Supreme Court held that, if a habeas petitioner failed to press a claim in prior state proceedings, the federal court is not just permitted to deny relief, rather "federal habeas review of the claims *is barred*. . . ." *Coleman*, 501 U.S. at 750 (emphasis added). In *Shinn v. Ramirez*, 596 U.S. 366 (2022), the Supreme Court held that even if state post-conviction counsel was ineffective, and consequently the state court record is not properly developed, nevertheless the federal habeas court is prohibited from considering any evidence beyond the state court record. *Shinn*, 596 U.S. at 382.

[8] Unlike the defendants in cases like *Fay*, *Coleman*, and *Shinn*, the governments' decisions are made following a multi-level review that includes attorneys across the DOJ. The decision not to seek the death penalty is an affirmative choice, not a failure to lodge an argument or objection at the appropriate time. And it is a decision that is made through a long process, not in the heat of trial or by incompetent attorneys. *See* Justice Manual §§ 9-10.060-9-10.080, 9-10.100, 9-10.130.

the government to turn square corners when it deals with them."); Model Rules of Prof'l Conduct R. 3.3 (duty of candor toward the tribunal); S.D. Ind. Local R. 83-5(f); Ind. Rules of Prof'l Conduct 3.3.

**4. The government's constitutional arguments are not rooted in law.**

The government's constitutional arguments are unpersuasive because they lack any basis in law.

The argument that the DOJ's Notice of Intent does not violate Mr. Meehan's Due Process, Equal Protection, and Eighth Amendment rights hinges on its argument that "the No-Seek was never a promise. It was not negotiated for consideration and nothing in the FDPA prevents the United States from reconsidering its decision whether to seek the death penalty." Dkt. 185 at 18. Here again, the government suggests there is some requirement for negotiation or consideration when there is none. But the meaning of constitutional protections in criminal cases cannot be that the government can do whatever it wants, up to and including trying to execute the defendant, regardless of what it said, so long as there was no quid pro quo. Moreover, the most persuasive quid pro quo a defendant in Mr. Meehan's position can offer the government is an agreement to plead guilty and accept a lengthy prison sentence in return for a no-seek. But Mr. Meehan was constitutionally unable to produce such an incentive because he was judicially determined to be incompetent, and BOP had failed to restore his competence at the time of the authorization proceedings.[9]

---

[9] During the authorization proceedings Mr. Meehan repeatedly objected to be forced to participate while their client was incompetent. Nevertheless, the DOJ charged forward. This will be the subject of a forthcoming motion to dismiss the Notice of Intent.

**Conclusion**

The government does not point to a single source of authority for its ability to arbitrarily change its mind and seek the death penalty despite a prior, supposedly final, decision that it would not. There is no legal basis for the government's arguments. Their arguments are nothing more than an assertion of power. But this Court should enforce the law. For the reasons relied on by every other district court to consider this issue, the Court should strike the Notice of Intent.

Respectfully submitted,

*Monica Foster*
Monica Foster
Chief Federal Defender

*Gwendolyn M. Beitz*
Gwendolyn M. Beitz

*Joseph M. Cleary*
Joseph M. Cleary
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
317-383-3520